Filed 7/28/26  In re L.W. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re L.W., a Person Coming Under the Juvenile Court Law.

| | |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E087971 |
| Plaintiff and Respondent, | (Super.Ct.No. J303791) |
| v. | OPINION |
| C.F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Conditionally reversed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

**INTRODUCTION**

Alleged father Carlos F. (appellant) appeals the termination of his parental rights over L.W.  Appellant contends the San Bernardino County Department of Children and Family Services (CFS) violated his due process rights by failing to exercise reasonable diligence in attempting to locate him and serve him with notice of the proceedings.  He contends the error was structural and requires reversal of all orders pertaining to him, including the jurisdictional findings, the dispositional order, and the termination of his parental rights.

We agree the efforts CFS made to locate and notice appellant were constitutionally deficient in light of case specific facts known to CFS.  We conditionally reverse the order terminating parental rights to allow CFS to exercise reasonable diligence to locate and properly notice appellant.  If appellant does not appear within a reasonable period thereafter, the juvenile court shall reinstate the termination order.  Our decision is without prejudice to appellant filing an appropriate motion pursuant to Welfare and Institutions Code[1] section 388 on remand to challenge any additional orders and/or findings previously entered against him.

**BACKGROUND**

On February 25, 2025,[2] CFS received an immediate response referral alleging general neglect.  It was reported that Judy W. (Mother) tested positive for amphetamine

---

[1] All further statutory references are to the Welfare and Institutions Code, unless indicated otherwise.

[2] All further date references are to the year 2025, unless indicated otherwise.

at a prenatal visit on February 14, and again in February when she gave birth to L.W. By the time the social worker went to the hospital to interview Mother, L.W.'s urine had been screened and L.W. also tested positive for amphetamine. Mother told the social worker she had a six- or seven-year history of using drugs, and acknowledged that she had used a few times while she was pregnant with L.W.

L.W. was Mother's fifth child, and her third child to have tested positive for amphetamine at birth. All four of Mother's other children had been removed from Mother's care in prior dependency proceedings. Mother's oldest child, M.W., was removed from Mother in 2017 after testing positive for amphetamine at birth. Mother failed to successfully reunify with M.W. and her parental rights were terminated. Mother's next two children, twin girls A.F. and M.F., were removed from Mother in 2018. Appellant was their father and was in prison during the course of the proceedings. The girls were placed with appellant's parents, Mr. and Mrs. W., and later adopted by the W.'s after the court terminated Mother's and appellant's parental rights. Mother's fourth child, N.W. was removed from Mother in 2020 after testing positive for amphetamine at birth. N.W.'s father was Steven P. Mother and Steven P. were both denied reunification services and N.W. was later placed in a guardianship with Steven P.'s parents.

At the time Mother conceived L.W., she was seeing both appellant and Steven P., and she was unsure which of the two men was L.W.'s father. Mother initially refused to provide CFS with the father's information "due to there being a possibility of two fathers." No father is identified on L.W.'s birth certificate.

3

CFS sought and obtained a detention warrant on February 26. L.W. was placed with a nonrelated foster parent.

On February 27, CFS filed a dependency petition that identified Mother and appellant as L.W.'s parents. The petition alleged that Mother had failed to protect L.W. by having a substance abuse problem from which she failed to rehabilitate, and that appellant had failed to protect L.W. because he knew or should have known about Mother's substance abuse problem, and he failed to provide adequate care for the child. (§ 300, subd. (b)(1).) The petition further alleged that appellant's whereabouts were unknown and he had left L.W. without any provision for support (§ 300, subd. (g)); and that Mother had prior dependency cases involving four of her other children, none of whom she had reunified with, and that L.W. was at a similar risk of harm (§ 300, subd. (j)).

At the detention hearing on March 3, the court conducted a paternity inquiry. (§ 316.2, subd. (a); Cal. Rules of Court, rule 5.635(b).) Mother identified appellant as L.W.'s father. Mother told the court that she and appellant were not married and do not live together, although they have two other daughters together. Mother said appellant knows about L.W. but does not acknowledge that L.W. is his daughter; he was not at the hospital when L.W. was born and is not listed on the birth certificate. Mother said she is in contact with appellant "all the time" through Facebook Messenger, but she did not know where he lived. Mother also identified Steven P. as a possible father. Mother provided Steven P.'s date of birth, but she did not have any contact information for him.

4

The court ordered L.W. detained, authorized supervised visitation and pre-dispositional services for Mother, and ordered Mother to take a drug test. Mother later failed to attend an on-demand drug test on March 14.

Leading up to the jurisdiction and disposition hearing, the whereabouts of appellant and Steven P. remained unknown. CFS filed declarations of due diligence on March 17 summarizing their efforts to locate the men. CFS searched various databases and found three addresses and five phone numbers associated with Steven P., and seven addresses and 13 phone numbers associated with appellant. CFS called and ruled out each of the phone numbers, and sent notice of the hearing, along with a copy of the petition and multiple forms (ICWA-020, JV-505 and JV-140) to each of the addresses by certified mail, return receipt requested.

Steven P. appeared at the courthouse on the day the jurisdiction and disposition hearing was initially scheduled. He provided CFS with his mailing address, but left before the matter was called. The court appointed counsel for him, authorized a paternity test, and continued the hearing.

On May 7, CFS filed an amended petition. The amended petition contained the same allegations as the initial petition, along with additional allegations as to Steven P. under section 300, subdivisions (b)(1), (g), and (j). The jurisdiction and disposition hearing was continued again in light of the amended petition. CFS attempted to contact Steven P. multiple times to arrange the paternity testing, but he did not respond.

On May 14, CFS filed three declarations of due diligence, one for Mother, one for Steven P., and one for appellant. CFS served notice of the jurisdiction and disposition hearing on each of the parents at the addresses identified in the due diligence declarations. For appellant, that included the same seven addresses identified in the initial due diligence declaration.

The jurisdiction and disposition hearing was held on June 30. None of the parents attended. The court found notice had been given as required by law. The court then found all of the allegations in the amended petition true and declared L.W. a dependent child under section 300, subdivisions (b), (g), and (j). The court bypassed Mother's reunification services under section 361.5, subdivisions (b)(10), (11), and (13), and found that appellant and Steven P. were alleged fathers, not entitled to reunification services. The court set the section 366.26 hearing for October 28.

CFS personally served Steven P. with notice of the section 366.26 hearing, and served Mother by substituted service. (§ 294, subd. (f)(3), (4).) CFS was unable to serve appellant because his whereabouts remained unknown.

On August 12, CFS filed an application for an order to serve appellant by publication. (§ 294, subd. (f)(7).) The application included a due diligence declaration setting forth the efforts CFS made in their attempt to locate and serve appellant. CFS searched various government databases and identified 10 possible addresses and 16 possible phone numbers associated with appellant. Of the 10 addresses, CFS ruled out nine. Three of the addresses were not viable—one was to an apartment complex without

6

a unit number, one was to the Los Angeles Department of Public Services, and one was to a state prison, and CFS confirmed that appellant was not in custody. Six of the addresses were potentially viable residential addresses. CFS attempted to personally serve appellant at each of those addresses but was told by the resident that appellant did not live there. The final address was to a general delivery address. CFS sent notice of the hearing to that address by certified mail, return receipt requested. CFS also called and ruled out each of the 16 possible phone numbers. One of the phone numbers belonged to appellant's uncle. CFS left callback information at that number.

On August 14, the court granted the request to serve appellant by publication and found notice of the section 366.26 hearing was complete. CFS later provided proof that they had served appellant by publication in the *San Bernardino County Sun* newspaper.

On August 13 and September 26, the social worker attempted to contact the adoptive parents of L.W.'s siblings and half-siblings (including appellant's parents, Mr. and Mrs. W.) to conduct an ICWA[3] inquiry and to inquire if they had any interest in being a possible placement for L.W. The social worker left voicemails but did not receive any return calls.

The section 366.26 hearing was eventually held on January 27, 2026. Mother attended the hearing; appellant and Steven P. did not. Mother's counsel and Steven P.'s counsel both objected to the court terminating their parental rights, but neither offered any affirmative evidence. The court found L.W. was generally and specifically

---

[3] Indian Child Welfare Act of 1978. (25 U.S.C. § 1901 et seq.; see Cal-ICWA, § 224, et seq.)

adoptable, and that the parental-benefit exception did not apply.  (See *In re Caden C.* (2021) 11 Cal.5th 614, 625.)  The court terminated the parents' parental rights and set adoption as L.W.'s permanent plan.

Appellant timely filed a notice of appeal.  It is unclear from the record how appellant learned his parental rights were terminated.  The address and phone number he provided on the notice of appeal were not included in any of the due diligence declarations.  Mother did not appeal, nor did Steven P.

**DISCUSSION**

A.  *Applicable Legal Standards*

The right to be notified of juvenile court proceedings "is both a constitutional and a statutory imperative" that applies to all parents, including alleged fathers.  (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114; *In re A.K.* (2024) 99 Cal.App.5th 252, 263-264.)

Dependency law differentiates "between 'alleged,' 'biological,' and 'presumed' fathers."  (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283; *In re A.K.*, *supra*, 99 Cal.App.5th at p. 263.)  A presumed father is one who "receives the child into their home and openly holds out the child as their natural child."  (Fam. Code, § 7611, subd. (d); *In re J.W.-P.* (2020) 54 Cal.App.5th 298, 301.)  "A biological father is one whose paternity of the child has been established, but who has not established that he qualifies as the child's presumed father."  (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.)  "An alleged father is just that—a man alleged to be the father, but who has not yet

8

established either presumed father status or biological paternity." (*In re A.K.*, at p. 263.) "A presumed father is afforded standing, the appointment of counsel, and reunification services, while a biological father's access to appointed counsel and services is discretionary." (*Ibid*.) Alleged fathers have fewer rights than presumed or biological fathers. They are not entitled to custody, reunification services or visitation (*In re J.W.-P.*, at p. 301) but "they nonetheless possess due process rights to be given notice and an opportunity to appear, to assert a position, and to attempt to change their paternity status." (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 712; *In re Mia M.* (2022) 75 Cal.App.5th 792, 807.)

"[A]n alleged father's rights (and/or corresponding duties on the part of the state), fall into essentially four categories: (1) the right to notice of the proceedings and of certain hearings (see [§§] 290.1, 290.2, 291, 294, subd. (a)(2)); (2) the right to notice of his rights as an alleged father and the steps necessary to elevate his status to that of a presumed father (see § 316.2, subd. (b)); (3) the court's corresponding duty to inquire into an individual's possible parentage through various extrinsic sources apart from the individual's own self-reporting (see § 316.2, subd. (a)); and (4) if the whereabouts of an alleged father are unknown, the state's constitutional duty to exercise reasonable diligence to find him, so that he may be given proper notice of the proceedings." (*In re A.H.* (2022) 84 Cal.App.5th 340, 350, fn. omitted.)

Reasonable diligence in this context " 'denotes a thorough, systematic investigation and an inquiry conducted in good faith.' [Citation.] It includes searching

not only 'standard avenues available to help locate a missing parent,' but ' "specific ones most likely, under the unique facts known to the [Agency], to yield [a parent's] address." ' " (*In re Daniel F.*, *supra*, 64 Cal.App.5th at p. 712.)  Child protective agencies "are bound by law to make every reasonable effort in attempting to inform parents of all hearings.  They must leave no stone unturned." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 102; *In re Mia M.*, *supra*, 75 Cal.App.5th at p. 808.)  "Due process notice requirements are deemed satisfied where a parent cannot be located despite a reasonable search effort." (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.)

The same standard of reasonable diligence governs service by publication.  (*In re D.R.* (2019) 39 Cal.App.5th 583, 592.)  Provided other statutory requirements are met, the juvenile court may authorize notice of the section 366.26 hearing to be served by publication "when a person's whereabouts remain unknown despite [a] reasonably diligent inquiry." (*In re D.R.*, *supra*, at p. 592; § 294, subd. (f)(7)(A).)

We review the juvenile court's finding that the child protective agency exercised reasonable diligence in attempting to locate a missing parent for substantial evidence. (*In re Sarah C.* (1992) 8 Cal.App.4th 964, 974; *In re S.K.* (2018) 22 Cal.App.5th 29, 36.) We review de novo the legal question of whether the court's finding of reasonable diligence violated the missing parent's due process rights.  (*In re J.H.* (2007) 158 Cal.App.4th 174, 183; *In re Mia M., supra*, 75 Cal.App.5th at p. 806.)

B.  *Application to the Present Case*

Appellant contends his due process rights were violated because CFS failed to exercise reasonable diligence in attempting to locate him and serve him with notice of the proceedings.  Specifically, appellant contends CFS failed to search for him on Facebook and failed to timely contact his parents to inquire about his whereabouts.  CFS counters that it conducted a thorough and systematic search for appellant, as documented in the three due diligence/absent parent searches.  As we explain, we agree with appellant.

In *In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598, the child protective agency "filed declarations of due diligence that, in and of themselves, demonstrated a reasonable degree of diligence in trying to locate the father."  But what was not reflected in the declarations was that the agency ignored information from the child that the father lived in Rialto and instead called directory assistance in a city where the father lived five years earlier in an effort to obtain his contact information.  (*Id*. at pp. 598-599.)  The agency had also failed to "thoroughly and systematically" follow up on information from the maternal grandmother that the father's contact information was listed on a Colton police report.  (*Id*. at p. 599.)  The court concluded that "[a]lthough the Department searched the standard avenues available to help locate a missing parent, it failed to search the specific ones most likely, under the unique facts known to the Department, to yield [the father's] address.  Accordingly, the trial court's finding of reasonable diligence [was] not supported by the record."  (*Id*. at p. 599.)

Similarly, in *In re D.R.*, *supra*, 39 Cal.App.5th at page 591, the agency searched almost two dozen government databases to obtain the father's contact information, but that was insufficient to establish reasonable diligence because the agency was aware that the father had been deported to Mexico, and the databases the agency searched were all based in the United States. The agency was also aware that two of the father's older children, both of whom were cooperative and available, were in contact with the father on Facebook, yet the agency failed to ask the older children for assistance in contacting the father through Facebook. (*Ibid.*) The court concluded that although the agency had "facially complied with the requirements of searching government databases, mailing notice to previous known addresses, and following up at said addresses," it "did not take steps a reasonable person would have if it were truly trying to give notice, such as asking for help from the half sibling(s) who told the department they were in contact with Father through social media." (*Id.* at p. 592.) When the agency "ignores the most likely means of finding the defendant, [service by publication] is invalid, even if the affidavit of diligence is sufficient." (*Ibid.*)

Here too, the due diligence declarations CFS submitted were facially sufficient— CFS had searched several government databases, mailed the petition and notice of the proceedings to appellant's previous known addresses, and followed up in-person at those addresses in an effort to locate appellant and serve him with notice of the section 366.26 hearing. Based on that evidence, the juvenile court found CFS exercised reasonable diligence in searching for appellant, and it approved the request to serve appellant by

publication. But what was not reflected in the declarations was that CFS had not pursued the avenues most likely under the unique facts known to the agency to yield appellant's contact information. It had not followed up on information from Mother that appellant could be contacted through Facebook, and it had not taken the very basic step of attempting to contact appellant's parents to inquire about appellant's whereabouts.

CFS was aware that appellant could be contacted through Facebook based on Mother's statement at the detention hearing that she was in contact with appellant "all the time" through Facebook Messenger, but it made no effort to search for appellant on Facebook. CFS also had contact information for appellant's parents, Mr. and Mrs. W., who were the adoptive parents of L.W.'s siblings (or half-siblings) A.F. and M.F. Yet the social worker made no effort to contact appellant's parents until *after* CFS submitted its request to serve appellant by publication. The record reflects that the social worker left a total of two voicemails for appellant's parents. It is unclear what information, if any, was conveyed in the voicemails, but the purpose of the calls was to conduct an ICWA inquiry and to inquire if they had any interest in being a possible placement for L.W. There is no indication in the record that CFS ever contacted or attempted to contact appellant's parents to inquire about appellant's whereabouts. It certainly did not do so before requesting to serve appellant by publication.

Service by publication is a last resort, available only when the agency has demonstrated reasonable diligence, i.e., that it conducted a thorough, systematic investigation and inquiry into the whereabouts of the missing parent. (*In re D.R.*, *supra*,

13

39 Cal.App.5th at p. 592; *Watts v. Crawford* (1995) 10 Cal.4th 743, 749, fn. 5.)  When the child protective agency has contact information for an immediate family member of a missing parent but fails to use it, service by publication is not warranted because the agency has not conducted a thorough, systematic investigation and inquiry into the whereabouts of the missing parent.

We therefore agree with appellant that CFS did not sufficiently discharge its obligation to use reasonable diligence to locate appellant using the case-specific information available to it.  The juvenile court's conclusion to the contrary, which was based solely on the declarations of due diligence, is not supported by the record.  We further conclude the failure of CFS to exercise reasonable diligence in its effort to locate appellant rendered the service by publication invalid (*In re D.R.*, *supra*, 39 Cal.App.5th at p. 592) and violated appellant's right to due process of law.  (*In re B.G.* (1974) 11 Cal.3d 679, 688-689 ["the state, before depriving a parent of [his parental] interest, must afford him adequate notice and an opportunity to be heard"].)

C.  *Prejudice*

Having concluded appellant's due process rights were violated, we now address whether the error was prejudicial.  The parties dispute which standard of prejudice applies.  Appellant contends the error was structural, or alternatively that the harmless beyond a reasonable doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) applies.  Either way, appellant contends, reversal is required.  CFS asserts the error is subject to harmless error analysis but does not take a position on

whether the applicable standard is that of *Chapman* or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), which requires the appellant to show a reasonable probability of a more favorable outcome. CFS contends the error was harmless under either standard.

When the child protective agency has made no attempt to serve notice on a parent, the error has been held to be reversible per se. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183; see e.g., *In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1116 ["the failure to attempt to give a parent statutorily required notice of a selection and implementation hearing is a structural defect that requires automatic reversal"].) Conversely, courts have applied harmless error analysis to errors that arise when the agency has attempted notice, although courts are divided on whether the *Chapman* or *Watson* standard of prejudice applies. (*In re A.H.*, *supra*, 84 Cal.App.5th at p. 372; see e.g., *In re J.R.*, *supra*, 82 Cal.App.5th at p. 591; *In re Mia M.*, *supra*, 75 Cal.App.5th at p. 806; *In re Marcos G.* (2010) 182 Cal.App.4th 369, 387; *In re J.H.*, *supra*, 158 Cal.App.4th at pp. 183-184; *In re Justice P.* (2004) 123 Cal.App.4th 181, 193 [applying the *Chapman* standard]; *In re Al.J.* (2019) 44 Cal.App.5th 652, 665-666; *In re Daniel F.*, *supra*, 64 Cal.App.5th at p. 716 [applying the *Watson* standard].)

We agree with CFS that the error in this case was not structural because CFS attempted to locate appellant and serve him with notice of the proceedings. As to whether the *Chapman* or *Watson* standard of prejudice applies, we need not resolve that issue, because under either standard we conclude the error was not harmless.

In a similar case where the child protective agency failed to locate and properly notice the alleged father until just before the section 366.26 hearing, the court in *In re Daniel F.*, *supra*, 64 Cal.App.5th at page 716, applied the *Watson* standard and concluded the error was not harmless. The court reasoned as follows: "Notice of a relatively inconsequential hearing was not at issue here. Rather, Father was deprived critical notice of the dependency proceedings and his rights as an alleged parent until just before the hearing in which parental rights were subject to termination. Meanwhile, there was minimal information in the record regarding Father's circumstances and background … . 'We cannot assume, based on this dearth of information, that had [appellant] established his paternity and been appointed counsel, he would not have received reunification services' or otherwise been able to assert and protect his parental rights.' " (*Id.* at p. 716, quoting *In re Paul H.* (2003) 111 Cal.App.4th 753, 761-762; see *In re A.H.*, *supra*, 84 Cal.App.5th at p. 372 ["To demonstrate prejudice, the record does not need to show that an alleged father would be elevated to presumed father status, '*because a biological father may get services if doing so is in the child's best interest*.' (§ 361.5, subd. (a))"].)

The reasoning of *In re Daniel F.* applies equally here. The failure of CFS to exercise reasonable diligence in locating appellant and serving him with notice of the proceedings resulted in the court terminating appellant's parental rights without appellant having been given the opportunity to appear, to assert a position, and to attempt to change his paternity status to protect his parental rights. (*In re Daniel F.*, *supra*, 64 Cal.App.5th at pp. 712, 716.) And we cannot assume, given the lack of information about appellant's

16

current circumstances, that had appellant been notified in a timely manner and established his biological paternity that the court would have denied him reunification services. L.W. was detained from Mother soon after she was born, and the only information in the record about appellant's lack of interest in asserting his parental rights came from Mother. Appellant should be given the opportunity to present his side of the story to the juvenile court before his parental rights are terminated. "[It] is implicit in the juvenile dependency statutes that it is always in the best interests of a minor to have a dependency adjudication based upon all material facts and circumstances and the participation of all interested parties entitled to notice." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 490-491.) Accordingly, whether we apply the *Watson* standard as the court did in *In re Daniel F.*, or whether we apply the more stringent *Chapman* standard, the failure to properly locate appellant and serve him with notice of the proceedings was not harmless, and reversal is required.

Finally, although we agree with appellant that reversal is required, we conclude a conditional reversal of the order terminating parental rights is the most appropriate disposition in this matter, as appellant has not yet appeared before the juvenile court. (See *In re J.R.* (2022) 82 Cal.App.5th 569, 593-596.) Conditional reversal will give appellant the relief he seeks: the opportunity to appear, to assert a position, and to attempt to change his paternity status. However, should appellant choose not to appear after being afforded proper notice, the juvenile court will have the ability to reinstate the termination order and proceed with the matter.

**DISPOSITION**

The order terminating parental rights is conditionally reversed and CFS is directed to exercise reasonable diligence as described in this opinion to locate and serve appellant with proper notice of the dependency proceedings.  If appellant fails to appear in the proceedings within a reasonable period of time after CFS has discharged this obligation, then the juvenile court shall reinstate its order terminating parental rights.

Our decision is without prejudice to appellant filing an appropriate motion pursuant to section 388 on remand to challenge any additional orders and/or findings previously entered against him, including but not limited to the jurisdictional and dispositional findings and orders.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

P. J.

We concur:

RAPHAEL _____

J.

LEE _____

J.